**Kenneth ELLMAN, Petitioner,**

v.

**R.E. DAVIS, Warden Westchester County Penitentiary, Valhalla, New York, Respondent.**

**No. 93 Civ. 2164 (CLB).**

United States District Court, S.D. New York.

Oct. 12, 1993.

Kenneth Ellman, Pro Se.

Gary Needleman, John Cross, Paralegal, Needleman & Schocket, Montville, NJ, for petitioner.

David G. Samuels, Sean Delaney, State of N.Y. Office of Atty. Gen. Robert Abrams, New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On April 5, 1993, the Petitioner Kenneth Ellman filed a Petition for a Writ of Habeas Corpus pursuant to Section 2254 of Tile 28 of the United States Code. 28 U.S.C. § 2254. At the time the Writ was filed, Mr. Ellman was being detained in this district, at the Westchester County Penitentiary in Valhalla, New York, for continuing civil contempt of the Orders of the Honorable Aldo A. Nastasi, Justice of the Supreme Court of the State of New York, County of Westchester, entered on July 31, 1989 and February 5, 1991, respectively, which were issued in connection with a civil corporate dissolution proceeding brought by the Attorney General of New York and entitled *"PEOPLE OF THE STATE OF NEW YORK, by ROBERT ABRAMS, Attorney General of the State of New York v. WESTCHESTER COUNTY S.P.C.C., a Not–For–Profit Corporation, and KENNETH ELLMAN and JOHN and JANE DOE, as Officers and/or Directors and/or Agents of the WESTCHESTER COUNTY S.P.C.C.,* Index No. 22360/87". Mr. Ellman was not sued except in his capacity as a corporate officer.

On April 8, 1993, Gary J. Needleman, Esq., appeared on behalf of the Petitioner before the Hon. Morris E. Lasker, the United States District Court Judge presiding in Part I, and presented the Court with a proposed Order to Show Cause to be issued pursuant to Section 2243 of Title 28, 28 U.S.C. § 2243, directing the respondent Warden to show cause why a writ of habeas corpus should not be granted releasing the Petitioner from custody on the grounds that he is being detained

pursuant to a facially invalid order of civil contempt, that his rights under the due process clause of the United States Constitution have been violated and that his continued detention constitutes cruel and unusual punishment under the Eighth Amendment. *See* Doc. No. 4. The Order to Show Cause was issued and made returnable before me on April 16, 1993.[1]

On the return date, Hon. David G. Samuels, an Assistant Attorney General for the State of New York, appeared before this Court and agreed to defend the respondent county official because the allegations concern the actions of the Attorney General of the State of New York in the above referenced state court proceeding and the Court orders issued therein. *See* April 16, 1993 Transcript, at 2–3. On April 16, 1993, this Court granted the petitioner's application for bail after concluding that "the petitioner has demonstrated that the habeas petition raises substantial claims, and that extraordinary circumstances exist which make the grant of bail necessary to make the habeas corpus remedy effective." *See* April 16, 1993 Transcript, at 40 and discussion at 40–47. Petitioner was released on bail on the same date, having been in custody since July 24, 1992, a total of 266 days.

On May 28, 1993, this Court held a hearing to determine whether the petition should be dismissed for a failure to exhaust state court remedies and, after oral argument, the Court reserved decision. *See* 28 U.S.C. § 2254(b). On June 8, 1993, this Court issued an Order converting the motion to dismiss into a motion and cross-motion for summary judgment on the ground that the procedural issue of exhaustion is inextricably intertwined with the merits, or lack thereof, of the petition. The matter was marked fully submitted on July 1, 1993, the date of the last submission by counsel. There are no genuine disputed issues of material fact. The following constitutes this Court's decision on all issues.

This relatively straightforward civil corporate dissolution proceeding seems to have taken on a life of its own. Accordingly, this Court will recount the background of the case in some detail. Beginning in 1875 and until November 1, 1989, the New York State Legislature authorized the incorporation of voluntary Societies for the Prevention of Cruelty to Children. *See* N.Y. Not–For–Profit Corp. Law § 1403(b) (McKinney 1970 & Supp.1993)[2]; N.Y. Times, February 7, 1989, § B, at 1. Members of these societies were given "peace officer" status under Section 2.10 of New York's Criminal Procedure Law, which empowered them to make summary arrests, file charges, take custody of children, and possess and carry handguns without a permit. N.Y.Crim.Proc.Law §§ 2.10, 2.20, 140.25 (McKinney 1992 & Supp. 1993). However, in November of 1987, the New York Legislature amended Section 2.10 of the Criminal Procedures Law by adding a subsection (7–a) which now requires peace officers to apply for a firearms license pursuant to Section 400.00 of New York's Penal Law. *See* N.Y.Crim.Proc.Law § 2.10(7–a); N.Y.Penal Law § 400.00(12–c) (1989 & Supp. 1993).

On November 16, 1987, Robert Abrams, the Attorney General of the State of New York, commenced the proceeding previously mentioned in the Supreme Court of the State of New York, County of Westchester, under Sections 112(a)(1) and 1101 of New York's Not–For–Profit Corporation Law for judicial dissolution of the Westchester County Society for the Prevention of Cruelty to Children ("the Society"). *See* Court Doc. No. 19, at 3; Court Doc. No. 16, Ex. 6, ¶ 4. The Attorney General alleged, among other things, in the Verified Complaint that the Society and its principal officer, Kenneth Ellman, had abused their special powers under Section 1403(b) New York's Not–For–Profit Corporation Law by acting as a "private police department," and by willfully failing to register and file annual financial reports pursuant to

---

1. Warden Davis accepted personal service of the Order to Show Cause on April 8, 1993. *See* Court Doc. No. 4.

2. Effective November 1, 1989, the New York State Legislature amended Section 1403 to pro-

hibit incorporation of corporations for the prevention of cruelty to children. N.Y. Not–For–Profit Corp. Law § 1403(b) (McKinney 1970 & Supp.1993). Existing societies were grandfathered.

Section 8–1.4 of the New York EPTL, and by specific ultra vires actions more particularly set forth in the complaint. Furthermore, no cases of child abuse or neglect had been brought by the Society in the Family Court for more than two years. The Attorney General also alleged that Mr. Ellman breached his duty as the principal officer of the Society to act in good faith and in a prudent manner, and had, instead, become a vigilante in the War on Drugs. *See* Court Doc. No. 12, Ex. 1, ¶ 1.

The Attorney General moved for preliminary and permanent injunctive relief against the Society, Mr. Ellman, and its officers, directors, agents and peace officers. By Order dated January 26, 1988, the New York Supreme Court preliminarily enjoined Mr. Ellman, the Society and its representatives from using any facility other than a municipal jail to detain persons, fingerprinting or photographing any person for any reason, and falsely representing to the public that the Society is an agency of the State, that it is a police agency, or that its agents are police officers. The order, as resettled in May 1988, apparently also ordered Mr. Ellman individually, in connection with six specified handguns purchased in 1984, to comply with the registration requirements of Penal Law § 400.00(12–c) within twenty days and submit proof of compliance to the court.[3]

On July 27, 1989, Justice Nastasi granted the Attorney General further injunctive relief and ordered the "defendants to report and turnover to a government law enforcement agency designated by the Court, all handguns that were acquired by defendants and registered with the New York State Police on the basis of Westchester SPCC peace officer authority and for which no license has been obtained as required by Criminal Procedure Law Section 2.10(7–a)...." *See* Court Doc. No. 16, Ex. 11, at 3 (Order entered on July 31, 1989). Justice Nastasi also adjudged the defendants to be in contempt of Court pursuant to Section 5104 of the New York's Civil Practice Law & Rules based on

defendants' continued misrepresentation to the public, that the Society is a government agency and its agents police officers. *Id.* The Court declined at that time to grant the Attorney General's motion for civil contempt against Mr. Ellman based upon his failure to register six handguns in accordance with Penal Law § 400.00(12–c), but stated that the Attorney General could renew this motion or "pursue a criminal prosecution against defendants under Penal Law Section 400.00(15)." *Id.* at 2.

On or about January 17, 1990, the State of New York, Division of Criminal Justice Services, removed Mr. Ellman's name from the peace officer registry. *See* Court Doc. No. 16, Ex. 14. In March of 1990, the Attorney General moved for an order, inter alia, holding Mr. Ellman and the Society in civil contempt based on their failure to comply with the Court's Order, which was entered on July 31, 1989, to turn over the handguns. In a decision dated September 5, 1990, Justice Nastasi ordered a hearing on the application for contempt and further enjoined Mr. Ellman and the Society from securing official license plates for motor vehicles and ordered them to surrender all such official plates in their possession.

In November of 1990, some three years after the commencement of state court litigation in New York, Mr Ellman obtained a license for 17 handguns in New Jersey.[4] *See* Court Doc. No. 17, 1993, at 5; Court Doc. No. 19, ¶ 28, at p. 8. In November of 1990, Mr. Ellman also moved for an order modifying the July 31, 1989 Order insofar as it required him to turn over all handguns for which no New York license had been obtained pursuant to Section 400.00(12–c) of the Penal Law and to vacate the September 5, 1990 decision insofar as it set a hearing on the application for contempt. Justice Nastasi denied Mr. Ellman's motion on November 26, 1990.

The contempt hearing was commenced on January 3, 1991 and was concluded on February 1, 1991. At the close of the hearing,

---

**3.** We do not find the resettled order in the voluminous files submitted. *But see* "stipulation to re-settle order" filed as Exhibit "E" to Petitioner's Rule 3–g Statement in this proceeding.

**4.** The Attorney General represented affirmatively to Justice Nastasi that Mr. Ellman moved his residence to New Jersey in November, 1987, and there is no credible evidence to the contrary.

Justice Nastasi rendered his decision from the bench. Justice Nastasi adjudged Mr. Ellman to be in civil contempt and sentenced him to 90 days in the Westchester County Penitentiary.[5] *See* Record on Appeal from October 20, 1992 Order, at 89 (which is Exhibit K to Court Doc. No. 27, and hereinafter referred to as "Record"). The Court concluded, however, that Mr. Ellman could purge his contempt and avoid imprisonment if, by February 8, 1991, Mr. Ellman turned over to the New York State Police seventeen certain handguns which he admitted were in his possession at his residence in New Jersey and which the Court concluded had been acquired by him in New York based on his status as a peace officer. Record, at 89–90. Justice Nastasi directed the Attorney General to prepare an Order. Record, at 90–91.

On February 5, 1991, Justice Nastasi reaffirmed on the record, and in the presence of Mr. Ellman, his February 1, 1991 decision and signed a written Order implementing that decision. *See* Record, at 157–165. The tenth decretal paragraph of that Order states that "if defendant Ellman fails to comply with any of the provisions of this order as they apply to him, defendant Ellman is to be imprisoned in the Westchester County Jail for a period not exceeding 90 days or until discharged according to law." Record, at 164–65.

On February 7, 1991, Mr. Ellman applied to the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, for a stay of the February 5, 1992 Order pending appeal, which was denied. He did not surrender the handguns to either the Attorney General's representative or to the New Jersey State Police, and Justice Nastasi issued a Warrant of Arrest for Civil Contempt on February 8, 1991. Record, at 166–169.

On March 21, 1991, the Attorney General moved by Order to Show Cause for an adjudication of criminal contempt based upon Mr. Ellman's "willful disobedience" of the Court's Orders of July 31, 1989 and February 5, 1991. *See* Record, at 170. By Decision and Order dated May 9, 1991, Justice Nastasi granted the application and imposed a sen-

tence of 90 days on each of two criminal contempt adjudications, to run consecutive to each other and consecutive to the previously imposed 90 day civil contempt. *See* Court Doc. No. 6, Ex. B. On May 14, 1991, on the Court's own motion, Justice Nastasi modified these sentences "to reflect that the terms of imprisonment for defendant Ellman's criminal contempt shall be thirty (30) days." *See* Record, at 174, 182. On June 7, 1991, Justice Nastasi issued two Warrants for Arrest for the two separate adjudications of criminal contempt. *See* Record, at 252, 255.

On May 31, 1991, Judge Nastasi "permanently enjoined defendant [Ellman] from serving as an officer, director or agent of any Society for the Prevention of Cruelty to Children." *See* New York Law Journal, May 21, 1991, at 21. The Court also directed the parties to settle a judgment on notice which provided for the dissolution of the Society. While noting that the Attorney General's remaining requests for relief against Mr. Ellman must be denied as "academic" once the Society is dissolved, the New York Court stated that if "such relief [had] not been granted, the relief sought herein as to defendant Ellman would have been granted in all respects." *Id.* On August 2, 1991, a Final Judgment dated July 29, 1991 dissolving the Society was entered in the Office of the County Clerk. Record, at 405–407. The Court purported to "retain jurisdiction of th[e] action for the purpose of the enforcement of th[e] Judgment and Order." *Id.* A timely Notice of Appeal was filed with the Appellate Division of the Supreme Court, Second Judicial Department, and that appeal is pending. The issues in that pending appeal, whatever they may be, do not extend to the propriety of Ellman's continued confinement, or his right to possess handguns in New Jersey.

On September 5, 1991, the Appellate Division, Second Judicial Department, dismissed Mr. Ellman's appeal from the February 5, 1991 civil contempt adjudication after finding that Mr. Ellman was "a fugitive from justice and is unavailable to obey the mandate of the court." *See* Court Doc. No. 12, Ex. 2. On

5. The contempt motion as to the Society was resolved by stipulation.

December 23, 1991, Mr. Ellman's motion for leave to appeal to the New York Court of Appeals was dismissed on the ground that "the order sought to be appealed from does not finally determine the action" and Mr. Ellman's motion for reargument was denied on April 2, 1992. *See* Court Doc. No. 12, Ex. 3.

Mr. Ellman remained at his residence in New Jersey as a "fugitive" until his apprehension in New York on July 24, 1992 pursuant to the three separate arrest warrants. On July 27, 1992, Justice Nastasi signed an Order of Commitment remanding Mr. Ellman to the custody of the Westchester County Department of Correction based on his prior adjudications of civil and criminal contempt. *See* Record, at 76, 191–201. By this time the civil lawsuit had been concluded for almost a year, by the Final Judgment of July 29, 1991, which was silent on the subject of the handguns.

On September 24, 1992, counsel for Mr. Ellman presented the Clerk of the Supreme Court of Westchester County with an Order to Show Cause for a New York writ of habeas corpus. This order was issued by Justice Nastasi and made returnable on September 28, 1992. Mr. Ellman argued that his continued detention pursuant to the contempt order was illegal and in violation of his rights under the due process clause of the United States Constitution. Specifically, he argued that (1) the New York State Court lacked authority to order a New Jersey domiciliary and resident to surrender firearms located at his residence in New Jersey; (2) the civil contempt ordered was a nullity, since all interlocutory proceedings and orders were merged in the July 29, 1991 Final Judgment of dissolution; (3) the criminal contempt adjudication was invalid for lack of service of the Attorney General's motion papers upon Mr. Ellman; (4) the second criminal contempt was a double jeopardy violation; (5) the civil contempt proceeding was punitive in nature; and (6) the confinement re-sulting from the three successive contempt proceedings constitutes cruel and unusual punishment. Record, at 241–49. Mr. Ellman also moved, by motion dated September 27, 1992, to disqualify Justice Nastasi. Record, at 49–57.

On the return date, September 28, 1992, Justice Nastasi denied the writ and the recusal motion from the bench. During oral argument, Mr. Ellman's then attorney, Charles Fiore, Esq. of Fiore & Lewis, advised the Court that Mr. Ellman had satisfied his civil contempt sentence based upon credit that was given to Mr. Ellman by the correction authorities pursuant to Section 804–a(1) New York Correction Law.[6] On October 5, 1992, the Attorney General moved by Order to Show Cause for civil contempt and to correct an alleged clerical error upon which Mr. Ellman's sentence was treated by the county correction authorities as a determinate sentence subject to good time credit, rather than an indeterminate sentence. Record, at 58–63. The Attorney General also moved to have Mr. Ellman recommitted for civil contempt based upon his continuing failure to comply with the Court's prior orders requiring him to turn over the 17 handguns.

On October 9, 1992, Justice Nastasi stated that Mr. Ellman's previously imposed sentence for civil contempt was "an indeterminate conditional sentence of civil contempt," and that Mr. Ellman "would be subject to continuing sentencing by this Court under a civil contempt were [he] not to comply with this Court's order and decision, and sentence." *See* Doc. No. 12, Ex. 6, at 24, 25. The Court declined to issue any order on the ground that the Court was merely "clarifying what it previously said for the benefit of all concerned." Record, at 377–378. When the hearing resumed on October 19, 1992, the Court "so ordered the transcript" over the objection of counsel for Mr. Ellman, and that "order" was entered in the County Clerk's

6. The Westchester County Department of Correction had determined that Mr. Ellman's sentence was 150 days [(90 days on civil contempt + 30 days on 1st criminal contempt + 30 days on 2nd criminal contempt)]. With credit for time served and "good conduct," the Department of Correction concluded that the minimum discharge date for Mr. Ellman was October 30, 1992 and the maximum discharge date was December 18, 1992. *See* Record, at 79.

Office on October 20, 1992. *See* Record, at 5, 46–47.

On November 18, 1992, Petitioner's attorney, David Lewis, Esq. of Fiore & Lewis, filed an appeal with the Appellate Division, Second Judicial Department, challenging the Court's October 20, 1992 "Order". *See* Record, at 3. As was to be anticipated, on March 2, 1993, the Supreme Court of New York, Appellate Division, Second Judicial Department dismissed the appeal because the so ordered transcript was not an appealable order. *See* Court Doc. No. 15, at 8. This elementary procedural trap must have been apparent to all the participants at the time.[7] As we noted earlier, the state court proceedings seem to have taken on a life of their own. Indeed, Petitioner quotes the court as having, on January 3, 1992, threatened to have the United States Marshal arrested should Ellman invoke the aid of this Court.[8]

In October of 1992, Mr. Ellman commenced two *pro se* Article 78 proceedings in the Appellate Division, Second Judicial Department, allegedly because the Supreme Court would not issue an appealable order.[9] *See* Court Doc. No. 15, at 22. In one application, he raised the issues he had presented in the state habeas corpus petition but sought a writ of prohibition rather than habeas corpus relief. In the second application, he challenged the October 9, 1992 clarification of his sentence and the recommitment. The Appellate Division denied both applications on the ground that Mr. Ellman "failed to demonstrate a clear legal right to the relief requested [Writ of Prohibition] which could not otherwise be safeguarded through alternative remedies." *See* Court Doc. No. 12, Ex. 10. Mr. Ellman's *pro se* application for leave to appeal to the Court of Appeals was denied on March 25, 1993. *See* Court Doc. No. 12, Ex. 11.

On January 13, 1993, the state court, on its own motion, signed an order and judgment dismissing Mr. Ellman's petition for a writ of habeas corpus. *See* Court Doc. No. 27, Ex. F. On January 14, 1993, a hearing was held on the Attorney General's motion to continue petitioner in confinement and a recommitment order was signed on that date. *See* Court Doc. No. 12, Ex. 13. In February of 1993, Mr. Ellman filed a motion to stay enforcement of (1) the October 19, 1993 Order "clarification" of his civil contempt sentence; (2) the January 13, 1993 denial of the writ; and (3) the January 14, 1993 Recommitment Order. By Decision & Order dated March 2, 1992, as amended on March 12, 1993, the Appellate Division denied Mr. Ellman's motion for a stay and dismissed, on its own motion, "the appeal from the purported order dated October 19, 1993 ... on the ground that said order is merely a decision, which is not appealable." *See* Court Doc. No. 14, Ex. 15. On March 25, 1993, Mr. Ellman's application for leave to appeal to the Court of Appeals was denied. *See* Court Doc. No. 27, Ex. M.

On February 2, 1993, Mr. Ellman also filed two Notices of Appeal with Appellate Division, Second Judicial Department, in which he challenged the January 13, 1993 denial of the writ and the January 14, 1993 Recommitment Order. *See* Court Doc. No. 12, Exs. 5, 14. Mr. Ellman concedes that he "ha[d] not perfected either appeal" prior to filing the instant petition for a Writ of Habeas Corpus before this Court. *See* Court Doc. No. 15, at 9. On April 10, 1993, five days after the petition for a writ was filed in this Court, Mr. Ellman wrote a letter to the Appellate Division, Second Judicial Department, in which he sought to withdraw his pending appeals from the January 13, 1993 denial of the writ and the January 14, 1993 Recommitment Order, and requested that his pending appeal

---

7. Perhaps a busy court would not recognize immediately that a "so ordered" transcript is not an appealable order, but certainly the chief legal officer of the state, and his assistants, would know better.

8. Affidavit of Kenneth Ellman sworn to September 28, 1992, in the state proceedings. This

Court notes that no official transcript of this statement was submitted.

9. Ellman has been represented by various lawyers at various times, and intermittently has acted *pro se*. While he has a right to change counsel or act without counsel from time to time,

be dismissed.[10] *See* Court Doc. No. 16, Ex. I. On May 21, 1993, the Appellate Division granted Mr. Ellman's request, despite the objections of the Attorney General's Office, and dismissed both of these appeals. *See* May 28, 1993 Transcript, at 19. In so doing, the Appellate Division, by closing the door, in effect provided any finality which might have been lacking. .

In the meantime, on March 31, 1993, Judge Nastasi signed yet another Recommitment Order for Mr. Ellman's continuing civil contempt. *See* Court Doc. No. 6, Ex. C. This Order provides that: "defendant Kenneth Ellman is recommitted conditionally to the custody of the Warden of the Westchester County Penitentiary, Penitentiary Division, for an additional term of incarceration not to exceed 90 days...." *Id.* at 5.

Although this Court's discussion below, of necessity, makes some reference to the July 29, 1991 Final Judgment of dissolution of the Society, the Court reminds the reader that this Court is *not* concerned with the propriety of the underlying dissolution proceeding (in which Mr. Ellman was named only in his capacity as a corporate officer), nor with any appeals taken therefrom; rather this Court is concerned only with the issue of whether Mr. Ellman's incarceration from July 27, 1992 through April 16, 1993, the date this Court released him on bail, for criminal contempt and continuing civil contempt violates his rights as guaranteed by the United States Constitution.

## I. *Exhaustion Issue*

Before this Court will address the merits of any constitutional issue raised on a writ of habeas corpus, "it must appear that the [petitioner] has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the [petitioner]." 28 U.S.C. § 2254(b); *see also* 28 U.S.C. § 2254(c);

*Gonzalez v. Sullivan,* 934 F.2d 419 (2d Cir. 1991).

The Petitioner has presented his federal constitutional claim, the same claim that is presented before this Court, to the State Court in a collateral proceeding for a Writ of Prohibition and had sought to appeal from the denial of the same. The Petitioner also directly appealed from Justice Nastasi's September 28 denial of the Writ of Habeas Corpus and that appeal was dismissed due to the state court's failure or refusal to issue an order in appealable form.

By this, and by the tortured history of his efforts to regain his liberty since he was confined, Petitioner has satisfied the exhaustion requirement, insofar as he has "fairly presented" to the state court all the issues now before this Court. *See Piccard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) ("[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.") *Gonzalez v. Sullivan,* 934 F.2d 419, 423 (2d Cir.1991) (Court of Appeals affirmed district court's conclusion that petitioner fairly presented his federal claim to the state court where "[p]etitioner's citation to the Fourteenth Amendment in a heading in his brief sufficiently alerted the state courts to the federal constitutional nature of the ... claim."). This Court therefore concludes that Mr. Ellman has exhausted his state remedies.

Even if this Court were to conclude that the petitioner had failed to exhaust his state remedies, which it has not, the Petitioner is properly excused from the exhaustion requirement. Exhaustion is unnecessary where, as here, there is either an absence of available state corrective process or the existence of circumstances, such as futility or inordinate delay, which render the process ineffective. 28 U.S.C. § 2254; *Duckworth v. Serrano,* 454 U.S. 1, 3–4, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) ("An exception is made [to

some procedural discontinuity is unavoidable as a result.

**10.** Mr. Ellman offered the following explanation for the application to the Appellate Division: "I am a prisoner with limited resources and time available. I do not have the present ability to keep appealing each ninety day order, nor do I believe it is necessary...." *See* Court Doc. No. 16, Ex. I.

the exhaustion requirement] only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief. . . .").

This Court concludes that the petitioner in this case has demonstrated that the remedy available to him in the state court is ineffective to protect his rights. The State Court remedies available to the petitioner in this case are virtually inexhaustible. This is because every ninety days a new Recommitment Order issues. *People ex rel. Reamy v. Director Central Islip State Hosp.*, 35 A.D.2d 595, 313 N.Y.S.2d 434 (2d Dept 1970); *Castille v. Peoples,* 489 U.S. 346, 350, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989) ("It would be inconsistent with [Section 2254(b)], as with underlying principles of comity, . . . permanently to bar from federal habeas prisoners in States whose post-conviction procedures are technically inexhaustible."). There would be no point in sending Mr. Ellman back to the state court to make repetitive and futile efforts to satisfy the exhaustion requirement.

Moreover, the State cannot complain of lack of exhaustion when the State itself was responsible for this failure. *See, e.g., Harris v. Kuhlman,* 601 F.Supp. 987 (E.D.N.Y.1985). In this case, without objection from the Attorney General, Justice Nastasi declined to enter an order in appealable form, and instead "so ordered" the transcript of the proceeding in which he decided that Petitioner's 90 day civil contempt sentence was "an indeterminate conditional sentence" and that the Petitioner "would be subject to continuing sentencing. . . ." *See* Record, at 46–47; 377–378; Court Doc. No. 12, Ex. 6, at 24–25. The Appellate Division, some *four* months later, to the surprise of no one except possibly the *pro se* Petitioner, held that this type of "order" is not appealable.

Despite this procedural obstacle thrown in his way, which was not the fault of the Petitioner, the Petitioner attempted to challenge this decision by direct appeal and also by filing a Writ of Prohibition. Both of these avenues of attack were unsuccessful. With respect to the writ of habeas filed in the State Court, Judge Nastasi either failed to or refused to enter an appealable order until January 13, 1993, some four months after that petition had been denied, during which time the Petitioner remained incarcerated. Again, the Petitioner tried, albeit unsuccessfully, to challenge this decision, without an appealable order, by seeking a Writ of Prohibition and also by direct appeal. Thus, the State effectively impeded petitioner's ability to exhaust his state remedies.

We do not fault the Supreme Court Justice for this momentary lapse; we understand that the Supreme Court in Westchester County handles many more cases per judicial officer than any federal court in the nation, and does so with far less supporting personnel. However, the Attorney General of the State of New York, as chief legal officer, had actual and constructive knowledge from the inception that the order was not appealable. A government lawyer dealing with the liberty of a citizen owes such a litigant and the Court something more than merely remaining silent for four months while an incarcerated person acting *pro se*, thereafter attempted to appeal a visibly non-appealable order. Indeed, the entire record reeks of extreme vindictiveness against a person who, in all events, has gone to New Jersey—and taken his guns with him. Surely, there are better things to do.

The Attorney General's Office does not dispute these facts. Instead, the Attorney General's Office argues that Petitioner should have exhausted his state remedies, by perfecting, rather than withdrawing the appeals he filed on February 2, 1993, after the state court decided to issue orders in appealable form.

This Court disagrees. At the time this petition was filed in federal Court, the petitioner had already spent 9 months in jail on a civil contempt adjudication. There is no telling how long he would have remained incarcerated if he were required to reargue issues previously presented to the New York appellate courts.

It would be futile to require any further exhaustion in this case. The petitioner has attempted repeatedly to challenge his incarceration, by way of appeals, and a state Writ

of Prohibition and a state Writ of Habeas Corpus. As Judge Friendly observed, exhaustion of remedies does not mean exhaustion of the petitioner. *United States ex rel. Kling v. LaVallee,* 306 F.2d 199, 203 (2d Cir.1962) ("I would not wish to be committed to a rule that when a state prisoner has exhausted all remedies the state had made available to him up to the date when he sought Federal habeas corpus, he must always be sent back on another journey through the state courts if the state, commendably, enlarges its post-conviction remedies thereafter.... [A]lways to require a second, not to speak of a third or a fourth [exhaustion] might well invite the reproach that it is the prisoner rather than the state remedy that is being exhausted.")

■ Exhaustion of remedies is neither a constitutional requirement, nor a jurisdictional limitation on the federal courts. *See e.g., Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Granberry v. Greer,* 481 U.S. 129, 131, 107 S.Ct. 1671, 1673, 95 L.Ed.2d 119 (1987) ("failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application"). Instead, this procedural requirement to exhaust state remedies is a matter of comity between the federal and state courts. Forbearance is based upon the assumption that the state remedies available to petitioners are adequate and effective to vindicate federal constitutional rights. When, as in this case, those state procedures become ineffective or inadequate, or are deliberately frustrated by state actions, the foundation of the exhaustion requirement is undercut and the federal courts may act.

## II. *Merits of Claim*

■ Based on the facts set forth above, and the following additional facts which are uncontested, this Court concludes that there was no justification under the Constitution, either procedurally or substantively, for the incarceration of Mr. Ellman.

All evidence in the state court record shows that it was appropriate that the Westchester County Society for the Prevention of Cruelty to Children be dissolved, be required to turn over its own property to the state, and refrain from attempting to exercise any of its corporate or statutory powers. This was accomplished by final judgment of the Supreme Court of Westchester County entered July 29, 1991. Ellman was a party to that litigation only in his representative capacity as an officer and director of the Society. Except for the appeal, this civil dissolution proceeding was then concluded. The Attorney General could have moved to dismiss that appeal for neglect of the Society to perfect it, but he did not.

Both parties agree that Ellman has not been a resident of New York State since approximately November, 1987. Indeed, this fact was relied on affirmatively by the Attorney General in the dissolution proceedings to support the legal conclusion that being a non-resident of the state, Ellman was unauthorized to act as a peace officer for the Westchester Society.

At no point in the state court record is it claimed that the handguns, however many there may be, are the property of the dissolved Society. The contention presented by the Attorney General seems to be that although Ellman purchased the handguns with his own personal funds, whereby they became his own personal property, he was enabled to purchase them without a handgun permit solely because of his *status* as a peace officer. The conclusion of the Attorney General, a total non-sequitur, is that upon losing his status as a peace officer he lost his property right in the handguns and had to surrender the handguns (then legally held by him in New Jersey) to the New York State Police. There is no jurisprudential basis for this remarkable conclusion, and indeed, the state court did not even attempt to state such a finding or conclusion, or support it with any statutory reference, or by caselaw, when it was first advised by the Attorney General.

It is uncontroverted that at all times, at least since the dissolution of the Society, and at the present time, Mr. Ellman possesses the guns, or some of them, at his residence in New Jersey. This possession is represented to be pursuant to a facially valid permit issued by the State of New Jersey, and the

Attorney General of New York presents no evidence to the contrary. See Court Doc. 17 at p. 5 and 19, p. 8. The Attorney General of New York has argued before me that this permit was obtained by misrepresentation, and indeed, his office has so informed the New Jersey authorities. This is hardly a basis for the coercive civil contempt power to be exercised in New York. Under our federalism, it is of no legitimate concern to the Supreme Court of Westchester County, New York that a New Jersey resident may be owning and possessing handguns in New Jersey, whether or not under a facially valid permit issued by the State of New Jersey. The New Jersey state government has adequate means at its disposal to enforce peace and tranquility within its own borders, without any need to rely on the efforts of a New York court or the New York Attorney General. It is not the province of the New York Attorney General's Office, or for that matter the Supreme Court of the State of New York, to enforce or interpret the laws of the State of New Jersey pertaining to firearms, whatever they may be.

There is no need for a civil contempt order to protect the public interest in New York State, which is the only legitimate interest of the Attorney General, because should Ellman ever come, armed, within the borders of the State of New York he would immediately be subject to criminal prosecution for the possession of a handgun in the absence of a New York permit.

His continued incarceration to compel compliance with interlocutory orders entered in a New York civil proceeding, which has long since been dissolved, for the dissolution of a corporation, which has long since been concluded, has no possible claim to procedural or substantive due process.

Since it is not disputed that these handguns are Ellman's personal property, there is no way for the state to get them away from him without compensation, in light of the Fourteenth Amendment of the United States Constitution. Guns may not be politically correct property, but they remain property.

Furthermore, these ostensibly civil commitments, at least by now, have developed into a criminal contempt. The confinement is no longer coercive, but punitive in nature, and invokes the right to greater procedural due process, including trial by jury.

There being no further purpose in New York of coercing plaintiff to do anything as of the present time, and petitioner having more than adequately paid his debt to society for whatever criminal contempt he showed to the Supreme Court, it is abundantly clear that the writ should issue.

For the foregoing reasons, this Court grants Mr. Ellman's writ and joins all persons having actual notice from conducting any further prosecutions of civil or criminal contempt of court against Mr. Ellman for any facts pertaining to his firearms existing as of the date of the final judgment to be entered herein. Lest this rather intransigent litigant should misunderstand the force and extent of this court's order, Mr. Ellman must understand that if he were to re-establish his residence in New York State; or simply transport, carry, or possess these or any other handguns within New York State without a lawful New York permit, he will be subject to well deserved criminal prosecution in the New York courts for any such violation.

Settle a final judgment on notice.

SO ORDERED.